142 EAST 79TH STREET CORPORATION, Plaintiff, *v.* CAMPBELL LOCKE and RALPH C. MASON, as Executors, etc., of EILA McKEE, Deceased, Defendants.

Municipal Court of New York, Borough of Manhattan, Ninth District, November 8, 1939.

*Davis, Symmes & Schreiber* [*Harold L. Herrick* of counsel], for the plaintiff.

*Alexander & Green* [*Clifton P. Williamson* and *Donald M. Dunn* of counsel], for the defendants.

Genung, J. This is a motion by the plaintiff for summary judgment. The complaint alleges the making of a written lease between plaintiff's assignor, 136 East 79th Street Corporation, and one Eila McKee, now deceased, as tenant, for the entire roof space " except such portions thereof as were then reserved by the landlord, or which thereafter might be required by any statute or ordinance for stairs, exits, fire escapes, flues and vents " for the building known as 142 East Seventy-ninth street, borough of Manhattan, New York city, for a term commencing October 16, 1928, to June 30, 1948, at an annual rental of $800. The defendants are the executors under the last will and testament of Eila McKee, deceased, and suit is brought against them for non-payment of an installment of rent in the sum of $66.67 that became due on June 1, 1939.

The answer sets up three separate and distinct defenses. The defendants have consented that there be stricken from the answer the third separate and distinct defense. The first separate and distinct defense alleges, in substance, that the plaintiff corporation was organized by and at the instance of 136 East 79th Street Corporation; that the officers and stockholders of both corporations are substantially the same; and that at the time the plaintiff received the assignment of lease, it had knowledge of the fact the Eila McKee had not been placed in possession of the premises, and that her executors, the defendants, had been excluded from the use, enjoyment and occupation of the premises by reason of the fact that the landlord has failed to supply either Eila McKee or the defendants with means of access to the demised premises. The second separate and distinct defense alleges, in substance, that prior to the execution of the lease in question, Eila McKee was a tenant of the entire seventh floor of the building known as 136 East Seventy-ninth street, which premises immediately adjoined premises 142 East Seventy-ninth street, under a lease made between plaintiff's assignor and Eila McKee and that this apartment was opposite and adjacent to the roof space leased by Eila McKee, and that the apartment was a convenient means of access to the roof space by any tenant or occupant of this apartment. It further alleges that prior to June 1, 1939, with the full knowledge of the plaintiff, the said 136 East 79th Street Corporation accepted a surrender of the lease of said apartment from the defendants, released them from all further liability and that the defendants did not have any occupation, use or enjoyment of the roof space or any means of access to the said roof space.

The pleadings and the affidavits submitted in support of and in opposition to the motion are generally in accord with the facts

and present a most unusual situation. The lease executed by Eila McKee for the apartment at 136 East Seventy-ninth street was what is known as a proprietary lease in a co-operative apartment house. Upon the execution of this apartment lease, which was for a term commencing October 16, 1928, and expiring September 30, 2027, Eila McKee purchased 690 shares of the capital stock of 136 East 79th Street Corporation which were issued to accompany said proprietary lease. In addition, Mrs. McKee entered into a proprietary lease for a similar period for a servant's room on the first floor of 136 East Seventy-ninth street, and purchased fifteen shares of the stock of 136 East 79th Street Corporation in connection with said lease. She thereafter executed the roof lease.

At the time of the execution of said lease, the only means of access which Mrs. McKee had to this roof was from her apartment in the adjoining building and doors were erected opening from the drawing room of her apartment onto said roof. The only other physical means of access to the roof was a staircase leading from a duplex apartment below the roof of premises at 142 East Seventy-ninth street. The door from this stairway to the roof was at all times bolted from within and it is alleged and not contradicted that either Mrs. McKee or her husband had issued specific instruction not to permit any occupant of the duplex apartment to enter upon the roof through the stairway and in addition had caused a sign to be affixed to the inside of the door which read " No Admission. Private. Robert T. McKee, Lessee of this Roof."

The proprietary leases were by an agreement dated February 13, 1935, between Mrs. McKee and the landlord, modified to provide, among other things, that Mrs. McKee might cancel said leases on September 30, 1939, by giving one year's notice of intention to cancel, by delivering up her stock and paying to the landlord a sum equal to ten per cent of the par value of the stock. On September 22, 1938, such notice was served by the executors of the estate of Eila McKee upon 136 East 79th Street Corporation.

It appears thereafter that in removing certain furnishings from Mrs. McKee's apartment, the executors wrongfully removed other items and caused damage to the apartment. Mr. Locke, one of the executor defendants, was thereafter advised that this damage was in excess of $1,000 but that the landlord was desirous of obtaining possession of the apartment and servant's room by June 1, 1939, and that if the executors were prepared to terminate these leases as of May 31, 1939, instead of September 30, 1939, the landlord would waive maintenance charges due on these apartments up to September 30, 1939, and would waive its claim for damages. Both the moving papers and affidavits in opposition agree that

at that time the executors were agreeable to such arrangement provided they also received a cancellation of the roof lease. The landlord, however, refused to cancel this roof lease, and thereafter an agreement was prepared dated May 27, 1939, by virtue of which the proprietary leases were canceled and possession of the premises surrendered to the landlord.

It is the contention of the plaintiff that the defendants knew that in surrendering the proprietary leases, they were giving up their only means of access to the adjoining roof space. The defendants contend that the surrender of the proprietary leases had no effect whatsoever upon their right to have access to the roof space and means of ingress and egress. They maintain that the lease of the roof space does not contain a single word upon which to base a release or waiver of the landlord's duty to provide means of access to the roof and that the tenants' right of access is an easement over the halls and stairways which will be implied by law. They contend further that an easement is not deemed to be abandoned except upon clear proof of definite, unequivocal acts showing clear purpose to abandon.

There is no question but that where premises are leased, the landlord must enable the tenant to have access to the premises. It is also true that if the means of access are through halls and stairways, the tenant would have an easement over the halls and stairways to enable him to secure access to the premises and that such an easement would be implied by law. However, in the case at bar, it definitely appears that the defendants' testatrix was aware of the fact that the only means of access to the roof was through the apartment in the premises 136 East Seventy-ninth street. She was aware of the fact that the landlord could not permit her to use the stairs leading from the duplex apartment in the premises 142 East Seventy-ninth street to the roof. In addition, the moving papers show, and are not contradicted, that it was the desire of Mrs. McKee and her husband that no one be permitted access from the stairs leading from the duplex apartment to the roof and that the only means of access to the roof was through Mrs. McKee's apartment. The lease itself contained the following clause: " It is understood and agreed that there is excepted from the space hereby demised such portions of the roof as are now reserved, or which in the future may be required by statute or ordinance for stairs from below, exits to such roof, fire escapes, flues and vents." With full knowledge of the existing physical condition of the premises, the defendants nevertheless chose to enter into an agreement whereby they voluntarily abandoned and conveyed away their only means of access to the roof space.

Both the moving papers and the affidavits submitted in opposition set forth that at the time of the execution of the surrender of the apartment lease, the defendants requested in addition a cancellation of the roof lease which the landlord refused to grant. It is obvious that such cancellation was requested only because the defendants were aware of the fact that in canceling the lease for the apartment, they were conveying away their only means of access to the roof space. It would undoubtedly be true that if the apartment lease granted to the landlord the right of cancellation and the landlord served a notice of cancellation, and thereafter entered into an agreement of surrender of the apartment lease, the landlord, by his act in canceling the lease, had prevented the tenants from gaining access and use and enjoyment of the roof lease. To my mind, the converse of this proposition is also true, and that the tenants having canceled the apartment lease knowing that in so doing they were surrendering their only means of access to the roof space, it was their act and not the act of the landlord which prevented the tenants from using and occupying the roof space.

It is my opinion, therefore, that the answer has failed to meet the allegations in the complaint and there is no defense to the plaintiff's cause of action, and, therefore, that the plaintiff's motion to strike out the defendant's answer and the separate defenses set forth therein should be granted and that judgment to the plaintiff for the relief demanded in the complaint should be awarded. Five days' stay.